Number 181513 United States v. Sidney P. Kilmartin Good morning, and may it please the Court. My name is Jemaisa Drake. I represent Sidney Kilmartin. May I have three minutes, please, for rebuttal? The testimony from the non-Denton victims about the diverse reasons why they wanted to die had no place in defendant's trial. Can I ask you something? I'm concerned with the state of the record and with our standard of review. As I understand what happened here, the defense prior to the start of trial made a general objection to having these individuals testify, the non-Denton victims. That was overruled. During the trial itself, as the victims testified, my understanding is there were no specific objections, or at least as a general matter, there were no objections. Is that correct? That's correct, because the defense was afforded a standing objection, given the Court's pre-trial ruling. A standing objection to what? To the testimony, to the live testimony of the non-Denton victims. I'm concerned about what the effect of that was, because if that's an objection to having the victims testify, the non-Denton victims, that's one thing. That, in my judgment, is probably not meritorious. There are specific areas of the testimony of the non-Denton victims that I at least have considerable question about. And you're saying that the district judge said something which fairly read exempted the defense from objections to specific parts of the testimony. In other words, there was some objection preserved other than the general objection to having the non-Denton victims testify at all. Yes, Your Honor. Okay. So this issue morphed over time, in part due to the fact that after this Court decided the Ford case, the district court judge asked for additional briefing, and there was, at certain points in the case, a change in counsel. Over time, this issue reduced down to a motion for a new trial based on what we have assigned error to in our brief. So we don't assign error directly to the Court's pretrial ruling, because I tend to agree that there were limited portions of their testimony that had probative value and that were relevant. However, in the motion for new trial, by the time we got to that phase of the case, the objection had carefully been winnowed down to the issues that we renew in our papers. And that is that, in particular, what we are calling the motivation testimony was irrelevant and inflammatory. But all that I'm pointing out to you is if those issues are raised by objection for the first time in a motion for new trial, that would generate a rather unfavorable standard of review from your point of view. I would agree. However, that I don't believe is the state of the record. I think defense counsel made his point of view very clear at the outset that testimony can be— And the judge said something that exempted defense counsel from making specific objections to the objectionable portions, because you will concede that these non-victims gave testimony which, in some respects, was well within the judge's discretion to admit, and in some respects was much more questionable. Yes. That being said, the probative parts of their testimony, and I agree that there were some, were cumulative of the testimony that was provided by other non-Denton victims. But that tends to suggest that the objection that resulted in the judge giving the standing objection was to their testimony at all, which is problematic for you. If instead it was clear that the reason for the objection was because it was known at the time of the objection that there were problematic parts of it that those were going to be used, and that the objection was because of the use of that, then the standing objection could be read as you're reading it, and then it might preserve the claim. But if, in fact, he was also objecting to the cumulative nature of the testimony that was probative, that suggests he was objecting to the testimony as a whole. And then the standing objection would be to the testimony as a whole and not to the discrete parts, which would be a problem for you. I understand. I mean, I certainly understand the Court's point on this. I suppose I offer two responses, which is the first, at the outset, it was understood by everyone that this testimony was going to be very difficult. In fact, the defendant agreed to allow a detective to present testimony about Mr. Jorgensen because he was too fragile to come in and testify himself. So no one was at all surprised that this testimony was going to be heart-wrenching, as the district court characterized it. Even if we are stuck under an obvious error standard of review, this material was so obviously prejudicial and unnecessary to the government's case that we submit that it would still be a basis to vacate the judgment. And these errors were not harmless, certainly not. The jurors easily could have rejected the government's theory that the defendant wanted to kill Mr. Denton to conceal his criminal activity. They could have instead found that he empathized with Mr. Denton and didn't wish him any ill will otherwise. They could have also believed what was the crux of the defendant's defense, which is that the government failed to undertake the forensic analysis that was necessary to definitively prove that the cyanide that Mr. Denton consumed was the cyanide that defendants supplied. Because at the time, Mr. Denton was seeking cyanide from at least one other additional source. So whether we are under a preserved error of use of discretion standard of review, and I would submit that we are, or under plain error, this is an error of such magnitude that it does require reversal. With respect to the statements by counsel that led to the granting of the standing objection, did counsel at that point make clear to the district court that part of the concern was the non-probative aspects of the testimony of the Denton victim? Yes. The non-Denton? Correct. Yes. Which is also why there was no... So the best argument for you would be some version of counsel would have thought, having made that objection to the district court, and the district court saying you have a standing objection, that you didn't need to then say what was obvious, that those parts were going to be used, and each time they used that had a problem. Correct. And I think sort of further evidence that everyone was on the same page about the nature of that objection is that the defendant did in no way as strenuously contest the testimony about packaging, payment, and communication that was presented by the non-Denton victims in a very dispassionate way. On top of that, and I think this is essential to the court's admissibility analysis and also harm, this was not material that the government needed. There was ample proof of packaging, payment, and communication as between the defendant and Mr. Denton, and so there is a strong argument to be made that the evidence to that effect from other non-Denton victims was really just propensity evidence encouraging the jurors to conclude that because he necessarily engaged in this behavior with other people, he must therefore have done so with Mr. Denton. Were this court to agree and reverse on these grounds, it would, I think, nevertheless, confront the second issue in this case, which is the causation issue. And with the court's permission, I'll move to that if there are not other questions. You said if we were to agree and reverse. I mean, we have to confront the causation issue anyway, don't we? Certainly. If you disagree with me, then yes. So the United States Supreme Court in Burrage rejected a contributing cause or a combined cause formulation for but-for causation, and instead it held that the defendant's actions have to be essential or dispositive to the result. And this court in the Ortiz case, which is a fascinating case about a defendant who was shepherding through very dangerous conditions, Haitian migrants in a journey to Puerto Rico, and the boat took on water and one of the migrants died, that so long as the defendant is entirely responsible for the universe of possible causes of a result, then but-for causation will actually happen there as well. Here we have a situation where it was really the combination of two things that brought about Denton's demise. It was the mailing of the cyanide, but we know that that alone was not lethal. As I learned from this case, apparently cyanide has a number of legitimate uses and travels with some frequency through the U.S. mail. It wasn't even lethal when it was sent to Denton. He kept it for 12 days before he ingested it. It only became lethal and it only resulted in death after Denton, of his own volition, purposefully consumed that substance. And this falls squarely within, our contention is, the universe of what the United States Supreme Court would identify as a combined causation chain, and therefore the government has failed to establish but-for causation. If a defendant poured the cyanide into some beef stew on the victim's plate and the victim then ate the beef stew, the defendant also wouldn't be responsible because, after all, the cyanide in the beef stew didn't cause any harm. It wasn't until the further act occurred that the victim ate it. So what makes the defendant responsible in situations like that, I suggest, may very well be that the substance is delivered for a particular purpose and the end result is foreseeable, reasonably foreseeable under all the circumstances. The cyanide was sent with the purpose that it would be ingested and would kill the person ingested. May I respond? I have two answers to that because I've thought about this hypothetical a great deal. And I think that we are, Burge, it's a fairly recent decision. I think we are still actually learning how it would work. But the last part of what Your Honor said really resonates with me, which is that from the outset the design was that these two individuals, having full knowledge of what would happen, agreed to this plan, which distinguishes it from the beef stew example. I do think it matters to the analysis that Denton was not an unwitting victim, unlike the person who is consuming the beef stew. If you have an unwitting victim, I think this Court might hesitate to say that mere behavior combined to cause the result. If we could just ground this in law, how would we do that? So I look at the word kill and then I'm thinking, well, that picks up various common law definitions of homicide, of which manslaughter is one. And as I understand it, common law understanding of manslaughter would encompass the circumstance you're talking about. So what's the problem with concluding that the statute covers this? Notwithstanding the points you make, which all might be relevant to a conclusion that it can't be first degree murder or something like that, but the word is kill. Right, so certainly this has relevance to our sentencing argument. But with respect to the causation argument, it remains true, nonetheless, that the result, which is death, it's not all of the, for lack of a better word, shine and the legal construction that we put around the term murder, but the specific result of death has to be the but-for cause of the actus reus element, which here was mailing. And we know that the mailing was not, as Burge instructs, it must be essential or dispositive of the result. But you're not talking about the phrase result in death. Correct. I'm focused on, for the witness tampering statute, the word kill. Right. So the argument is the same because I... ...precisely because of the foreseeability of the result. And as I understand it, the word kill in the federal statute picks up common law manslaughter. Unless there's some reason to think that's wrong, I'm not following how the statute can be read to exclude this scenario. So it's an interesting point that I'll confess I hadn't thought of. But what I suggest in the brief is that this court and others have equated kill with murder and treated it as murder and not manslaughter. So if your Honor is correct that it does pick up manslaughter and that this could fall within the definition of involuntary manslaughter, then perhaps the conviction of the witness tampering charge might stand. That, of course, would have sentencing implications because the district court's approach at sentencing is that this was... I mean, the court specifically rejected the notion that this was akin to anything other than a first-degree premeditated murder. Thank you. Good morning, Your Honor. May it please the court, Benjamin Block for the United States. Starting with the issue of the non-Denton evidence, the government would submit that there was no error under any standard in the admission of the entire... How on earth is the victim's account, the non-Denton victim's accounts of why they were thinking of suicide and how they came to the decision to request cyanide in their individual cases, how is that relevant to the charges against the defendant? Well, it's relevant because the government charged a scheme to defraud... to these people who had indicated an interest in suicide, and you can show all of the transactional facts. But that's not the question I asked you. How is it relevant what brought the victims to that point when you knew those were going to be, in the judge's words, heart-wrenching stories which have absolutely nothing to do with this prosecution? No matter how a victim got to the point of ordering, of deciding that he was interested in suicide and ordering product from Denton, that wouldn't change anything as far as this case was... wouldn't legitimately change anything as far as how this case would be tried and resolved. Well, I would submit that, as the Supreme Court noted in Old Chief, the government's presentation of evidence doesn't need to be stripped of all emotional force. No, it doesn't, but the evidence has to have probative value that exceeds its unfairly prejudicial effect. And what I'm asking you is, what conceivable probative value does that portion of the evidence have that would exceed what strikes me as likely to be a very strongly and unfairly prejudicial effect? Well, I think it contributes to the credibility of the witnesses who are testifying... How does it contribute to the credibility? Because this was a scheme to defraud suicidal persons. That's true. And so the witnesses could have simply testified, I was suicidal, I wanted cyanide. Right. I don't think it goes too far for the witness to provide some context as to their suicidal impulse in order to bolster their own credibility as to their purpose in attempting to obtain cyanide. What does the origin of particular witnesses' suicidal impulse have to do with the defendant's guilt or innocence here? I mean, I can't see any possible reason for introducing that evidence other than a desire to poison the jury against the defendant. I mean, I can see it's powerful emotional evidence, and the jury is likely to react in a very predictable way to it. Well, I think it's important not to overstate the impact that this testimony likely had on the jury. Before you get to saying why it's not impactful, just on the probative point, just so I understand your argument, is the idea that it was critical to government to prove that the people he was seeking out were suicidal and that there was no way for the government to make the case that they were suicidal unless they could explain why they were? That would be our position, that this scheme was specifically charged as one to defraud suicidal persons. And if you actually look through Government's Exhibit 16, which is part of the evidence disputed by the defendant, there are people who reach out to the defendant seeking cyanide for other reasons, either for science experiments or for business. And we would submit that those people did not fall within the defendant's criminal scheme and the witness's credibility as to their purpose in seeking to obtain cyanide. Was their testimony about their suicidal tendency testimony that tended to show that he knew that they were? Because that would seem probative to me. But if it's testimony that they were that he wouldn't have known about, I am having a little trouble seeing what's probative about it. Well, you can see some communications between the defendant and these victims in Government's Exhibit 16, and some of them do convey some information. But what beyond that would have been relevant in the case? In other words, if they have a heart-wrenching story that led them to be suicidal that he had no knowledge of and that there's no suggestion he had knowledge of, why is it of any relevance? Well, it's relevant. Again, it's relevant to the jury's assessment of the witness's credibility. And so they reached out to the defendant to obtain cyanide for purposes of committing suicide. Was there an issue in the case as to whether these non-Venton victims were suicidal? No. Indeed, the defendant had pled guilty to the charges involving them, right? Correct. And that's why I would say that at the end of the day, despite the amount of argument that was generated in the defendant's appellate brief and post-conviction in the motion for a new trial, the actual quantum of evidence that is in dispute is very small in the context of the trial as a whole. We are talking about 6 out of 28 witnesses. We're talking about approximately 70 total pages of witness testimony out of almost 900-page trial transcript. And the disputed portion of that testimony, the motivation evidence, is really only about 9 or 10 pages total out of a 900-page trial transcript. So we're talking about a small quantum of evidence that provided some context to the jurors about the nature of the scheme. And to the extent that there might be a concern that the jury would have reacted overly harshly, I think their verdict suggests that they took this very seriously and they analyzed the evidence and they acquitted the defendant as to one of the witness tampering counts. And so I don't think that the record suggests that they were unduly swayed by this. And I think that when you look at the minimal nature of the quantum of evidence and the jury's verdict, I don't think there's a basis to find that this was an error that affected the outcome. Turning to the causation issue, I think that the defendant misunderstands Burrage's discussion of combined causation. Because Burrage involved a resulting-in-death case in which under 841 where drugs were distributed, the defendant ingested them and died. But in Burrage, there were multiple drugs in the defendant's system. And so the issue there was what was the combined causation with respect to the individual drugs? There was no dispute, and indeed it wasn't questioned by the Supreme Court, that the sale of the drugs could be separate from the ingestion of the drugs by the victim. And that's what we have here. We have a distribution of a poison and an ingestion of a poison in consecutive steps. And Burrage doesn't suggest that that is a problem but for causation. And indeed, this court in De La Cruz found the same. And in order to use- What is the significance of the fact that there was an intervening actor, unlike in the typical scenario of the ingestion of the drugs or putting it in the beast's stew without them knowing it, where the actor takes it for the purpose of accomplishing the act? Right. I think that that really goes to the question of proximate causation, not but-for causation. I think we still clearly have but-for causation had Mr. Kilmartin not sent the cyanides. Forget the terminology. We have a statute that uses the word kill. We have a statute that uses the word results in death. And we have a factual scenario in which a person is giving a poison to someone who they know wants to take the poison in order to commit suicide. And then we have all these states that don't seem to treat that as first-degree murder. What are we supposed to-how are we supposed to interpret the federal statute for this scenario? Right. I think that-I think the finding of first-degree murder here was truly driven by the jury's finding, to which we need to give evidence that the motivation here was to kill him because he was a potential witness. That is what drove the judge's decision that this had to be first-degree murder. I think absent that, I think- But the mailing-doesn't the mailing statute have the word kill? No. The mailing statute is mailing an injurious article with the intent to commit-to cause death or harm. I think it's resulting in death. Resulting in death. Resulting in death. That's the one. Is mailing the substance resulting in death? Correct. But importantly, with the intent to injure or kill. Yeah. And so- Kill. Yes. But that's the question. It's the same word. And here's the- Is there an intent to kill when I give something to someone knowing that they will take it and they intend to kill themselves? Right. That's different than if I give it to someone who doesn't intend to take it to kill themselves, knowing that it will kill them. And that's why most states don't really treat-have this separate assisted suicide treatment. Well, yes. And that's when Kevorkian talks about the difference between those-it's not as if he counseled him to kill himself or urged him to do it. He provided the means, knowing that there was a volitional person who would use those means. So does that mean he has the intent to kill? And how-what are we supposed to look to to figure that out? I think you look to the elements of the statute. And here you have the mailing. And then you have the intent. You have- Well, that just begs the question. He has the intent to submit-to give the person the substance. No, he has the intent to injure or kill. That is an element of the mailing statute. What is the basis for saying that when I give a substance that will kill someone to someone who I know intends to take it to kill themselves, that I have the intent to kill, as opposed to the intent to assist someone who wants to kill himself? Correct. And I think that-I think there are various factual scenarios that one could speculate about. If you have a doctor who has a patient who is suffering from a terminal illness, and the doctor provides them with a drug that they can use to commit suicide without counseling, but just sort of recklessly gives them the drug, knowing that it has the potential to kill them- And knowing the person wants it for that purpose. Correct. Then I think you might have a question of intent. But here, you might have a question as to whether the intention of the doctor was to cause death or injury, or they were simply reckless with respect to that. Isn't your best argument here that there's kind of a domino relationship between these convictions? If the conviction for witness tampering is sustainable, that's a conviction that requires a finding that he interfered with the witness intending to kill him. That's the language of that statute. If that's sustainable, then that undergirds- Correct. My question is why. Why is the first one sustainable? Now, one possibility is because kill picks up manslaughter, common law manslaughter. But is that the theory? Because you don't seem to be saying that. Well, kill does pick up common law manslaughter. So is that the only basis we could find it, or are you saying that even independent of the witness tampering evidence, just mailing it to someone is first-degree murder? Again, you would have to look at the intent. So, for example, the person, the distributor who originally mailed the cyanide to Mr. Kilmartin- There's a first question of what does kill mean. Yes. If kill means you have to have malice, that's one question about what his intent would have to be. If kill means he only has to have manslaughter, that's a different version of what you'd have to show his intent was. So which is the government's view on that? What does kill mean in the statute? Intent to do what kind of killing? I think kill does capture common law manslaughter. But doesn't the penalty provision of the statute suggest the contrary? Isn't this the statute that says that if you're guilty, the penalty is life imprisonment? Or death. Or death. Does not suggest first-degree murder? You usually don't have that kind of penalty for manslaughter. And then that's my worry, is does the word kill, barely read, encompass this? If it does mean that kind of murder, does it encompass this kind of conduct, which I agree with you fits within common law manslaughter. But I have some doubt that a common law, this would be the kind of murder that the punishment aspects of the statute seem to be contemplating. I think it also contemplates second-degree murder. And second-degree murder may not require malice of forethought, but it certainly could be captured by the word kill. And I think, importantly, here in this case, we have ample evidence on which the jury could have relied with respect to this issue of intent. And so certainly, if I could just complete this thought, certainly the court might imagine hypotheticals in which behavior could, in which the causation element could be so removed that it wouldn't be appropriate to apply. But here you have elements of the statute that the court can look to. You have evidence that supplies the necessary intent. And so even though there was this intervening act of a third party, the law on proximate causation is that as long as those acts are reasonably foreseeable, and there can be no question that it was reasonably foreseeable that Mr. Denton was going to ingest the cyanide, that that does not break the causal chain. And so there was the necessary intent to kill that satisfies both the mailing statute and the witness tampering murder statute. Thank you. I'll pick up at that last point, which is to say that the states would disagree. The difficult part about assisted suicide cases is that the intent and the foreseeable result is death, including for a person who simply just furnishes the means. Now, if I understand the last point, it was some version of what if the evidence showed that the intent to kill was in order to prevent him from being a witness? Right, sir. In other words, the witness tampering statute requires that as an element. Right. But on the mailing statute, there's an intent to kill. And if the intent to kill is, let's say, malicious killing, why wouldn't that be satisfied by the evidence, which the jury had, that he was intending to kill him in order to have him not be a witness? Right. Were they not instructed that they had to find that? Well, I guess I just want to start by correcting what actually the mailing statute provides, because I'm not sure that we're all on the same page about that. The only mens rea element in that statute is knowingly deposits in the mail. Now, I read into that because of the penalty, because it could be punished by death, that it has to be intentionally results in death. But that is not this. Isn't the word kill also in that statute? No. In the mailing statute? No. I don't think so. In subsection 3, simply, so subsection 1. Subsection 1 has the word kill in it, does not it? No. Subsection 1 provides whoever knowingly deposits for mailing or delivery or knowingly causes to be delivered in the mail material that's prohibited shall be in prison not more than one year or both. The word kill doesn't appear in subsection 1, and it doesn't appear in subsection 3, which is the aggravated results in death element. And is it in 2? No, 2 is, let me just take another look. It's in 2. With intent to kill or injure, but that was not the subsection under which he was prosecuted. He was prosecuted in 2. He was prosecuted under J3, results in death. 2 and 3, I thought. That's why I thought the government waives 3. Am I wrong about that? Well, 2 is, I guess, I'm looking at the superseding indictment as it is cited in the caption. But their theory was always subsection 3, and it's on subsection 3 that he was punished. Wasn't he convicted under 2? He was convicted under 3, I believe. He was convicted under 2, I believe. I certainly have no doubt. 2 he convicted under 2. Well, then it still just reduces down to, and this is why in my brief I am willing to concede that the government presented adequate proof of the mental state, is you cannot then ignore that there's still this but-for causation problem, and there's no authority that the government cites, and I'm certainly not aware of any, where proof of other elements of the criminal offense satisfy a third element where the proof is lacking, here that would be but-for causation.  Thank you.